Rossy García, Juez Ponente
*971 TEXTO COMPLETO DE LA RESOLUCION
El recurso instado en el caso de epígrafe interesa la revocación de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan (Hon. Mirta Irizarry Ríos). Mediante ésta, dicho foro, luego de *972 proceder con la celebración de una vista en ausencia del apelante, quien no fue notificado del señalamiento, declaró con lugar la demanda. En tal virtud, condenó al co-demandado-apelante, Gabriel Suau, a satisfacer a la parte demandante-apelada, Popular Leasing, Inc., la obligación reclamada.
Inconforme el aquí apelante con dicho dictamen, y luego de serle denegada una moción de reconsideración y en solicitud de determinaciones de hecho y conclusiones de derecho adicionales, interpuso en tiempo oportuno el recurso que nos ocupa. En éste, imputa en su único señalamiento de error que incidió el foro de instancia al dictar sentencia contra el co-demandado-apelante, Gabriel Suau Rubio, concediendo el remedio peticionado en la demanda, “por éste no comparecer a la vista celebrada el 1 de julio de 1999 cuando el Tribunal de Primera Instancia no notificó al compareciente de dicha vista”.
Habiendo comparecido la demandante-apelada con su alegato en oposición y encontrándonos en condición de dictaminar, resolvemos que resulta procedente emitir sentencia revocatoria de la apelada para ordenar la reinstalación de los procedimientos en lo que al aquí apelante respecta.
I
El 22 de enero de 1997, Popular Leasing, Inc. presentó demanda sobre cobro de dinero ante el Tribunal de Primera Instancia, Sala Superior de San Juan. Fueron incluidos como demandados Israel Dones Zayas y el aquí apelante, Gabriel Suau Rubio, estando predicada dicha acción en un alegado incumplimiento con los términos de un Contrato de Arrendamiento Financiero sobre un vehículo marca BMW, en el que figura como arrendador el co-demandado Israel Dones. Según se expone en la demanda, ante un alegado incumplimiento por parte de los demandados y conforme a lo pactado en la cláusula 17 de Contrato de Arrendamiento, Popular Leasing vendió el vehículo objeto del contrato por la suma de dieciocho mil quinientos dólares ($18,500.00), acreditando dicha suma al importe adeudado por la parte demandada, restando un balance deudor de ocho mil cuatrocientos setenta y cuatro dólares ($8,474.60). Por dicha suma, la que alega la demandante-apelada está vencida, es líquida y exigible, solicitó un pronunciamiento de sentencia a su favor.
De otra parte, surge de los autos que una vez emplazado el demandado-apelante Suau, procedió éste a presentar su contestación a la demanda en tiempo oportuno. En la misma negó, por falta de información, las alegaciones básicas de la demanda y levantó una serie de defensas afirmativas. Entre otras, alegó en oposición que el Sr. Suau “no tiene relación contractual con la parte demandante ”, que la parte demandante no acude al Tribunal con las manos limpias, así como que la parte demandante estaba impedida de esgrimir en su contra las causas de acción contenidas en la demanda.
En este estado de los procedimientos, la parte demandante presentó una moción de sentencia sumaria que fue debidamente notificada, la que dio base a una moción en solicitud de prórroga para replicar a la misma por parte del aquí apelante. Este, además, presentó una demanda de coparte contra el demandado Dones. Con estos antecedentes y sin haberse contestado la referida moción, el foro de instancia señaló una vista para discutir el estado de los procedimientos para el 27 de enero de 1998. A ésta asistieron las partes representadas por sus respectivos abogados. En representación de la demandante, asistió la Leda. Suzette M. del Valle. El demandado Dones Zayas estuvo representado por la Leda. Melba del C. Ramos Aponte y el co-demandado-apelante, Suau Rubio, representado por la Leda. Jane Becker Whitaker. Surge de la minuta correspondiente a la referida vista que en dicha ocasión convinieron las partes en reunirse para agotar esfuerzos transaccionales. A tales fines, el foro de instancia les concedió hasta el 12 de marzo de 1998 para informar el resultado de dichas gestiones. De otra parte, surge de la minuta que ningún remedio se solicitó en relación con la moción de sentencia sumaria presentada por la demandante, lo que implica que tácitamente se dio por desistido del remedio peticionado en dicha etapa procesal, obviamente, con derecho la demandante promovente de la moción para solicitar la reinstalación de la misma de entenderlo apropiado.
*973 Con estos antecedentes y según surge de los autos, entre la demandante y el co-demandado Dones se iniciaron las gestiones transaccionales que habían abundado éstos en ocasión de la referida vista. No obstante, no informaron posteriormente al tribunal el resultado de dichos esfuerzos. Ello dio base a que el foro instancia emitiera Orden el 21 de agosto de 1998 requiriendo la presentación de la correspondiente estipulación transaccional dentro de un término de veinte (20) días. Luego de gestiones adicionales entre la parte demandante y el co-demandado Dones, sin formalizarse la transacción anunciada, compareció en autos la representación legal del demandado Dones mediante moción de carácter informativo. En ésta expuso las dificultades que había confrontado para formalizar el acuerdo transaccional y solicitó un término adicional para someter la estipulación anunciada. De la referida moción se desprende que por error e inadvertencia, copia de la referida moción, la que fue notificada a la representación legal de la demandante-apelada, no le fue notificada al co-demandado-apelante Suau, ni a su representación legal.
Considerada como fue la referida moción informativa y sin percatarse el foro de instancia que la misma no le había sido notificada al demandado Suau, emitió Orden el 8 de abril de 1999 señalando una conferencia con antelación ajuicio para el 18 de mayo de 1999. En la referida orden dispuso, además, que “de tener [las partes] la transacción anunciada desde enero de 1998, podrá ser recibida debidamente suscrita por las partes en el día señalado”. Surge de dicha orden que el foro de instancia incurrió en la misma omisión que el co-demandado Dones al no notificar dicha orden al aquí apelante Suau. Así, tal orden de señalamiento fue notificada el 12 de abril de 1999 a la demandante y al co-demandado Dones por conducto de sus respectivas representaciones profesionales, omitiéndose cursar notificación alguna al co-demandado Suau. Quedó así, a partir de ese momento, interrumpida toda comunicación entre las otras partes y el tribunal con el aquí apelante.
Las omisiones antes indicadas, en perjuicio del aquí apelante, continuaron. Surge así, que notificada como fue la orden de señalamiento de la conferencia con antelación ajuicio, el co-demandado Dones presentó el 17 de mayo de 1999, es decir, un día antes del señalamiento ordenado, una moción solicitando la suspensión y transferencia de dicha vista. Esta moción tampoco le fue notificada al apelante Suau, ni a su representación legal. Surge de la minuta correspondiente a la referida vista, a la que sólo compareció un representante de la demandante, que dicha moción fue considerada en corte abierta por el foro de instancia y declarada con lugar. Se dispuso así un señalamiento para vista en su fondo para el 1ro. de julio de 1999. Habiendo quedado informada la demandante del nuevo señalamiento, se dispuso que se notificara copia de la minuta a la Leda. Melba C. Ramos, representante legal del co-demandado Dones. Ninguna notificación se le cursó al aquí apelante, quien tampoco estuvo presente en dicha fecha por desconocer del señalamiento de la referida conferencia. Tal nuevo señalamiento, ahora para vista en su fondo, tampoco le fue notificado al aquí apelante.
Notificada como fue dicha minuta, según indicado, la representación legal del co-demandante Dones presentó una moción solicitando la suspensión de la vista en su fondo ordenada, la que presentó el 25 de junio de 1999; es decir, seis (6) días con anterioridad al señalamiento, moción que tampoco notificó al aquí apelante.
Fue en tales circunstancias y ante la incomparecencia de los demandados a la referida vista, que el foro de instancia, haciendo total abstracción de que el co-demandado-apelante Suau Rubio no había sido notificado de las incidencias y señalamientos posteriores a la vista efectuada el 27 de enero de 1998, en que la demandante y el demandado Dones anunciaron que habrían de iniciar gestiones y esfuerzos transaccionales, que procedió a la vista por él ordenada. Procedió luego a emitir la sentencia aquí apelada, la que fue notificada a todas las partes el 16 de agosto de 1999. Por su parquedad, procedemos a transcribirla íntegramente:

“SENTENCIA

A la vista celebrada el 1 de julio de 1999, compareció el Lie. Andrés García Arregui en representación de la 
*974
parte demandante. La parte demandada no compareció.

Examinado el expediente y a base del testimonio ofrecido por el Sr. Miguel Guindín, Supervisor de Cuentas, el Tribunal dicta sentencia en este caso condenando a la parte demandada, a pagar a la parte demandante la suma de $8,474.60 de principal más intereses legales a partir de la fecha de esta sentencia al 8.75%, las costas, gastos y $1,200.00por concepto de honorarios de abogado.

REGISTRESE YNOTIFIQUESE:

En San Juan, Puerto Rico, a 4 de agosto de 1999.

(Fdo.) Myrta Irizarry Ríos

Juez de Primera Instancia ”

Notificada como fue dicha sentencia, el 28 de agosto de 1999, la Leda. Ramos Aponte presentó moción renunciando a la representación legal del co-demandado Dones. En la misma expuso que su representado se encuentra residiendo en los Estados Unidos, indicando su dirección, así como que luego de estar de acuerdo con los términos de la estipulación transaccional que le remitió el 25 de junio de 1999, le manifestó que habría de buscar asesoramiento legal para acogerse a la Ley de Quiebras.
Por su parte, el aquí apelante Suau, luego de serle denegada una moción de reconsideración, predicada en la falta de notificación de las incidencias procesales que culminaron con la sentencia antes referida, y en solicitud de determinaciones de hecho y conclusiones de derecho adicionales, interpuso el recurso que nos ocupa. Resolvemos que en las circunstancias particulares del caso que nos ocupa, el dictamen apelado no puede prevalecer en cuanto al demandado-apelante Suau. Procedente resulta, en consecuencia, emitir sentencia revocatoria de la apelada en lo que a él respecta.
II
La Constitución de Puerto Rico dispone en su Artículo II, Sección 7, que ninguna persona será privada de su propiedad o libertad sin un debido proceso de ley. La garantía del debido proceso de ley opera en dos dimensiones distintas: la procesal y la sustantiva. La vertiente sustantiva del debido proceso de ley persigue proteger y salvaguardar los derechos fundamentales de la persona. La vertiente procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. Unión Independiente de Empleados de la Autoridad de Edificios Públicos v. Autoridad de Edificios Públicos, 146 D.P.R. _ (1998), 98 J.T.S. 111, pág. 51; Rodríguez Rodríguez v. E.L.A., 130 D.P.R. 562 (1992). Si bien la característica medular es que el procedimiento debe ser uno justo, a través de la jurispmdencia normativa se han identificado componentes básicos del debido proceso de ley, tales como una notificación adecuada y la oportunidad de ser escuchado y de defenderse. Unión Independiente de Empleados de la Autoridad de Edificios Públicos, supra. Así, en Rivera Rodríguez & Co. v. Lee Stowell Taylor y otros, 133 D.P.R. _ (1993), 93 J.T.S. 111, pág. 10927, el Tribunal Supremo reitera que en todo procedimiento adversativo el debido proceso de ley debe satisfacer los siguientes requisitos: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho de contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado; y (6) que la decisión se base en el récord. Feliciano Figueroa v. Tosté Piñero, 134 D.P.R. _ (1993), 93 J.T.S. 161, p. 10366.
De otra parte, la notificación adecuada de todo procedimiento adversativo, requisito indispensable del debido proceso de ley, está contemplada y reglamentada en las reglas 65.3 y 67 de Procedimiento Civil, 32 L.P.R.A. Ap. *975 III. Así y en lo pertinente, la Regla 67.1 de Procedimiento Civil dispone que:

“Excepto cuando otra cosa se disponga en estas reglas, toda orden que de acuerdo con sus términos deba ser notificada, toda alegación subsiguiente a la demanda original, a menos que el tribunal ordenare otra cosa debido al número de demandados, todo escrito relacionado con descubrimientos de prueba que deba ser notificado a una parte, a menos que el tribunal ordenare otra cosa, y toda moción escrita que no pueda ser oída ex parte se notificará a cada una de las partes. ”

Por su parte, la Regla 67.2, reglamentando la forma como debe hacerse la notificación, provee como sigue:

“Siempre que una parte haya comparecido representada por abogado, la notificación se hará al abogado, a menos que el tribunal ordene que la notificación se haga a la parte misma. La notificación al abogado o a la parte se hará entregándole copia o remitiéndosela por correo a su última dirección conocida, o de ésta no conocerse, dejándola en poder del secretario del tribunal. Entregar una copia, conforme a esta regla, significa ponerla en manos del abogado o de la parte, o dejarla en su oficina en poder de su secretaria o de otra persona a cargo de la misma; o, si no hubiere alguien encargado de la oficina, dejándola en algún sitio conspicuo de la misma, o si la oficina estuviere cerrada o la persona a ser notificada no tuviere oficina, dejándosela en su domicilio o residencia habitual en poder de alguna persona que no sea menor de 18 años que resida allí. La notificación por correo quedará perfeccionada al ser depositada en el correo. ”

Claro queda así reglamentado las órdenes y escritos que deben ser notificados, así como la forma de hacer la notificación, exigencias que son de estricto cumplimiento, toda vez que, de lo contrario, una parte puede ser privada de su día en corte y como consecuencia, de su propiedad, mediante la ejecución de una sentencia adversa, sin que haya mediado el debido proceso de ley. Sociedad de Gananciales v. Martínez, 99 D.P.R. 820, 823 (1971). Al mismo tenor, se ha resuelto que la correcta notificación de una sentencia es característica imprescindible del debido proceso judicial, 147 D.P.R. _ (1998), 98 J.T.S. 152, a la pág. 353, habiendo expresado el Tribunal Supremo que una notificación a la dirección errónea de un abogado de una parte, equivale a ninguna notificación. Id., a la pág. 354. Además, la correcta y oportuna notificación de las órdenes y sentencias es un requisito sine qua non de un ordenado sistema judicial, cuya omisión puede conllevar graves consecuencias, además de crear demoras e impedimentos en el proceso judicial. J.A. Cuevas Segarra, Práctica Procesal Puertorriqueña: Procedimiento Civil, San Juan, Publicaciones J.T.S., 1979, Vol. II, pág. 436.
Ninguna duda debe existir en cuanto a que, conforme a nuestro ordenamiento procesal, la notificación deberá hacerse a todas las partes en el pleito. Esta, a su vez, deberá hacerse por conducto de su representación legal cuando haya comparecido asistido de abogado, a menos que el tribunal ordene que la notificación se haga a la parte misma. Ello es así, toda vez que sobre éste recae la responsabilidad de salvaguardar los remedios que tenga disponible su cliente, consustancial ello con el debido proceso de ley, Rodríguez Febo v. F.S.E., 116 D.P.R. 31 (1984); Pueblo v. Hernández Maldonado, 129 D.P.R. 472, (1991), 91 J.T.S. 93.
La Regla 65.3, supra, que se refiere a la notificación de sentencias y órdenes en virtud de las cuales se hace una adjudicación de una cuestión en controversia o con respecto a derecho y reclamaciones de las partes, Rodríguez de Lausell v. Tribunal Superior, 93 D.P.R. 672 (1966), dispone que inmediatamente después de archivarse en autos copia de una orden o sentencia, el secretario notificará tal archivo a todas las partes que hubieran comparecido en el pleito en la forma preceptuada en la Regla 67 de Procedimiento Civil. De lo contrario y como antes habíamos indicado, esa parte puede ser privada de su día en corte y como consecuencia, de su propiedad, mediante la ejecución de una sentencia adversa, sin que haya mediado el debido procedimiento de ley. Sociedad de Gananciales v. Martínez, supra.
*976 Finalmente y por las circunstancias en que se emitió la sentencia apelada, debemos tener presente que si bien la Regla 37.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, le confiere discreción al Tribunal de Primera Instancia para eliminar las alegaciones de una parte, anotar la rebeldía o desestimar una demanda como sanción por incumplir sus órdenes, Hartman v. Trib. Superior, 98 D.P.R. 124 (1969), tal autoridad se debe ejercer juiciosa y apropiadamente. En cuanto a este extremo, ha sentenciado el Tribunal Supremo que planteada una situación que de acuerdo con la ley y la jurisprudencia aplicable, amerita la imposición de sanciones, éste debe, en primer término, imponer las mismas al abogado de la parte. Si dicha acción no produce frutos positivos, procederá la imposición de la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones “tan solo después que la parte haya sido debidamente informada y/o apercibida de la situación y de las consecuencias que puede tener el que la misma no sea corregida”. Maldonado v. Srio. de Rec. Naturales, 113 D.P.R. 494, 498 (1982). Al así dictaminar, expresó, además, que “la experiencia señala que en la gran mayoría de los casos que presentan esta clase de dificultades, las partes no están enteradas de la actuación negligente de sus abogados y al advenir en conocimiento de ello, la situación es corregida de inmediato”. Id., Claro queda que resulta improcedente la imposición de sanciones drásticas a una parte por las actuaciones displicentes de su representación legal, sin que ésta tuviera conocimiento de tal conducta y las posibles consecuencias de no tomar medidas correctivas. Amaro González v. First Fed. Savs., 132 D.P.R. 1042, 1051 (1993). Así, la imposición de sanciones severas, como es la eliminación de alegaciones y la desestimación, son procedentes sólo “para aquellos casos extremos en que no exista duda alguna de la irresponsabilidad o contumacia de la parte contra quien se tomara las medidas drásticas”. Amaro González, supra, a las págs. 1051-52.
De otra parte, en nuestro ordenamiento jurídico prevalece la política judicial de que los casos se ventilen en sus méritos. Neptune Packing Corp. v. Wackenhut Corp., supra, pág. 293; Imp. Vilca, Inc. v. Hogares Crea, Inc., 118 D.P.R. 679, 686 (1987); Díaz v. Tribunal, 93 D.P.R. 79, 87 (1966). Por ello, estas normas procesales deben interpretarse liberalmente y cualquier duda debe resolverse a favor del que solicita que se deje sin efecto una anotación de rebeldía o una sentencia, a fin de que el proceso continúe y el caso pueda resolverse en sus méritos. Díaz v. Tribunal Superior, supra, pág. 87 (1966). Al respecto, el Tribunal Supremo de Puerto Rico señaló en J.R.T. v. Missy Mfg. Corp., 99 D.P.R. 805, 811 (1971), que el propósito de las disposiciones procesales no es conferir una ventaja a los demandantes o querellantes para obtener una sentencia sin una vista en los méritos, sino que son normas procesales dirigidas a estimular la tramitación diligente de los casos. Por ello, y por lo oneroso y drástico que resulta sobre la parte demandada una sentencia dictada en rebeldía, es que se ha establecido la norma de interpretación liberal, debiendo resolverse cualquier duda a favor del que solicita que se deje sin efecto la anotación de rebeldía, a fin de que el caso pueda verse en los méritos. En este análisis, sin embargo, debemos también tener presente que, si bien nuestro ordenamiento jurídico favorece que los pleitos se resuelvan en los méritos, existe un interés legítimo de los litigantes y de la sociedad en general en que los casos se tramiten en un tiempo razonable y que su adjudicación sea final, el cual también tiene que tomarse en cuenta cuando se solicita la reapertura de una rebeldía. Fine Art Wallpaper v. Wolff, supra, pág. 457; Díaz v. Tribunal Superior, supra. Por ello, la discreción conferida a los tribunales bajo las reglas 45.3 y 49.2, les requiere establecer un balance justo entre el interés de velar y garantizar que los procedimientos judiciales se ventilen sin demora y el derecho que tiene todo litigante a tener su día en corte y a que sus alegaciones y reclamaciones sean adjudicadas en los méritos. Fine Art Wallpaper v. Wolff, supra, págs. 457-458 (1974); Maldonado v. Srio. De Rec. Naturales, 113 D.P.R. 494, 497 (1982).
De tal modo, cuando en un caso existe la posibilidad de que la parte demandada cuente con una buena defensa y la reapertura del caso no ocasiona perjuicio alguno, constituye un claro abuso de discreción el denegarla. Una buena defensa, como regla general, debe siempre inclinar la balanza a favor de una vista en los méritos, a menos que las circunstancias del caso sean de tal naturaleza que revelen un ánimo contumaz o temerario por parte del demandado, Román Cruz v. Díaz Rifas, 113 D.P.R. 500, 507 (1982); J.R.T. v. Missy Mfg. Corp., supra, pág. 811, situación que no está presente en el caso que nos ocupa. Ellos nos obliga a concluir que el *977 foro de instancia abusó de su discreción e incidió, primero, al proceder a la vista en rebeldía en ausencia del demandado-apelante, quien no fue notificado del señalamiento. Segundo, al negarse posteriormente a relevar a los demandados-apelantes de los efectos de la sentencia en rebeldía aquí apelada para reiterarse en su dictamen previo.
Finalmente, totalmente frívola e inmeritoria, nos resulta la argumentación de la demandante-apelada a los efectos de que el demandado-apelante, Sr. Suau, debió informar que interesaba continuar recibiendo notificaciones sobre el estado de los procedimientos y las gestiones y negociaciones transaccionales entre la demandante y el co-demandado Dones. Basta con reiterar que la Regla 67 de las de Procedimiento Civil requiere que la notificación deberá hacerse a todas las partes en el pleito. En el caso de autos, la notificación no se hizo de acuerdo con lo dispuesto por nuestro ordenamiento procesal, al no notificar las partes y el tribunal al aquí apelante las mociones, órdenes y minutas que culminaron con la sentencia aquí apelada. Ello tuvo el alcance y consecuencia de privarlo de un proceso justo en violación al derecho que le asiste a un debido proceso de ley. En tales circunstancias, la sentencia aquí apelada, no puede prevalecer.
De otra parte, e independientemente de lo ya indicado, evidente resulta que el demandado-apelante actuó con diligencia durante el trámite procesal del caso. Ello se hace evidente al observar que una vez emplazado, presentó en tiempo oportuno su contestación. En ésta, invocó defensas legítimas que opuso a la reclamación de la demandante; instó demanda de coparte y asistió a todas las vistas e incidentes procesales a las que fue invocado. De otra parte, surge que sus incomparecencias, tanto a la conferencia con antelación a juicio como a la vista en su fondo, se debieron exclusivamente a la falta de notificación de las mociones presentadas por las partes y las órdenes del foro de instancia según ya indicado. En tales circunstancias, no podemos atribuir proceder negligente alguno a la apelante, que pudiera justificar la sanción drástica que alcanza la celebración de una vista en su ausencia, en rebeldía, por su incomparecencia involuntaria a una vista que no le fue notificada.
III
Por los fundamentos antes expuestos, se dicta sentencia revocatoria de la apelada en cuanto al demandado-apelante Gabriel Suau Rubio y se ordena y dispone la reinstalación de sus alegaciones y la continuación del trámite procesal en cuanto a éste, en forma armoniosa con lo antes dispuesto.
Lo acuerda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General